RICHARD F. CAST, APPELLEE, v. NATIONAL BANK OF COMMERCE TRUST AND SAVINGS ASSOCIATION OF LINCOLN, NEBRASKA, EXECUTOR, TRUSTEE, AND RESIDUARY LEGATEE AND DEVISEE OF THE LAST WILL AND TESTAMENT AND ESTATE OF WILLIAM J. WEBERMEIER, DECEASED, APPELLANT.

183 N. W. 2d 485

Filed February 5, 1971. No. 37212.

Samuel Van Pelt, for appellant.

Robert T. Cattle, Jr., for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

An opinion on the merits of this case was filed on March 27, 1970. Cast v. National Bank of Commerce T. & S. Assn., 185 Neb. 358, 176 N. W. 2d 29. Thereafter a reargument was ordered on motion for rehearing and this opinion is in response to the reargument.

The facts in the case are correctly stated in the first opinion. The question here considered is one of law involving the validity of certain provisions of the will of William J. Webermeier, deceased. The questioned provisions are: (1) That Richard Cast or one of his children within a year after testator's death shall move to and occupy the devised farm as his residence and domicile for a period of 25 years; (2) that the occupant shall within 1 year by appropriate legal action add the name "Webermeier" to his legal name; and (3) that if any of the above conditions are not met as prescribed, presently or in the future, title to the real estate shall revert

to the residuary legatee specified in paragraph VI of the will.

It must be conceded that in earlier times, prior to 1929 at least, conditions subsequent, attached to a devise in fee simple were held to be enforcible by this court. As an example, see Peters v. Northwestern Mutual Life Ins. Co., 119 Neb. 161, 227 N. W. 917, 67 A. L. R. 1311. In 1941, the Legislature enacted the Uniform Property Act which at least constituted a change of policy in certain areas of the real property law of this state. In 1953, this court, in Andrews v. Hall, 156 Neb. 817, 58 N. W. 2d 201, 42 A. L. R. 2d 1239, gave effect to the legislative change in public policy and held: "We do not say that a testator may not create a vested fee simple estate subject to a condition subsequent, or a determinable or defeasible fee. What we do say is that a restriction against alienation of a vested fee simple estate is not any one of these, nor, since it is void, can it be used as the sole basis for the creation of any of these estates. A restraint on alienation in the form of a condition subsequent, forfeiting or terminating the fee simple estate, or providing for a limitation over upon breach of the condition, is void. * * * The right of alienation is inherent in the vested fee simple estate and it arises by virtue of the fact that such an estate is created. The nature of estates in fee simple determinable, estates in fee simple subject to a condition subsequent, and estates in fee simple defeasible upon a condition subsequent, are fully discussed in Ohm v. Clear Creek Drainage Dist., 153 Neb. 428, 45 N. W. 2d 117. A perusal of that case will demonstrate that a restriction against alienation of a vested estate in fee simple is no part of, nor incidental to, any one of these estates. Consequently, cases dealing with the creation of recognized common-law estates have no application to a restriction against alienation of a vested fee simple estate."

In the instant case, the provisions in question are conditions subsequent to a fee simple title and have the

effect of restricting alienation and provide for a limitation over for a breach within a period of 25 years; this for the reason that a breach of the conditions subsequent within 25 years would cause the title to go to the residuary legatee under the provisions of the will.

We deem it necessary to again point out the public policy involved in the enactment of the Uniform Property Act. In Ellingrod v. Trombla, 168 Neb. 264, 95 N. W. 2d 635, we said: "The act was drawn primarily to abolish anachronisms in the law of property, to abolish many out-of-date characteristics which have come down to us from the early feudal law of England, and which are out of place in the law of today, and also to correct many characteristics which have crept into the law from improper application of the early law and which can be gotten rid of today only by statutory enactment. * * * The purpose and policy of the Uniform Property Act is to make the law a much more modern and effective instrument in administering the law of property and to free courts and lawyers of the present from being compelled in cases involving the title to real property to wander in a labyrinth of ancient learning. The modernization of our real property law, including antedated provisions that serve no purpose in our modern era, was long overdue when the Legislature enacted the Uniform Property Act into the statutory law of this state in 1941. The power of the Legislature to meet the need is not questioned. Its very purpose was to change the old order insofar as the conveyance of property was concerned. This is evidenced by the terms of the law which it enacted. By section 76-121, R. R. S. 1943, it enjoined upon the courts the duty to construe the act so 'as to effectuate its general purpose to make uniform the law of those states which enact it.' From this it is made clear that the act is to be interpreted, where doubt as to its meaning exists, in conformity with the intentions of the drafters of the act."

The rule that the devise of a fee simple subject to con-

ditions providing for a forfeiture or reverter or limitation over upon breach are void, is the general rule announced by the courts of this country irrespective of the fact that there was no statutory authority for so doing. See the following cases: Newkerk v. Newkerk (N. Y.), 2 Caines' Rep. 345; Wills v. Pierce, 208 Ga. 417, 67 S. E. 2d 239; Pardue v. Givens, 54 N. C. 306; Stansbury v. Hubner, 73 Md. 228, 20 A. 904; Casper v. Walker, 33 N. J. Eq. 35. Where an owner of land in fee simple absolute makes an otherwise effective devise thereof to a named devisee and his heirs but if such devisee or his heirs during a fixed term of years attempt to transfer the land by any means, the land shall go over to another, the forfeiture restraint qualified only as to time is invalid. The first devisee has an indefeasible estate in fee simple. Restatement, Property, § 406, Illustrations 1 and 2, pp. 2397, 2398. In view of the fact that the Uniform Property Act was drafted and promulgated by the American Law Institute as a joint undertaking with the National Conference of Commissioners on Uniform State Laws, it stands to reason that it is intended to be consistent with the Restatement of the Law of Property.

One of the primary incidents of ownership of property in fee simple is the right to convey or encumber it. It is the general rule that a testator may not create a fee simple estate to vest at his death and at the same time restrict its alienation. This is because conditions which restrict alienation are repugnant to the very estate the testator has created. Sections 76-299, 76-2,100, 76-2,101, and 76-2,102, R. R. S. 1943, are cited in our former opinion as supporting the validity of the conditions contained in the will. We point out, however, that the foregoing sections of the statute do not purport to create a new estate nor to expand the existing law on the subject. The intention of the testator is clear from the will. But the intent statute is a rule of construction that cannot have the effect of changing substantive law. "We

reiterate, however, that this intent statute does not have the effect of changing substantive law and is, in fact, declaratory of a rule of construction long adopted by the courts. We have held that it relates only to rules of construction and does not enlarge or limit, or in any way modify, any rule of substantive law that existed at the time of its passage or that thereafter has been created. Stuehm v. Mikulski, 139 Neb. 374, 297 N. W. 595, 137 A. L. R. 327; Majerus v. Santo, 143 Neb. 774, 10 N. W. 2d 608. We adhere to these holdings." Andrews v. Hall, *supra*.

The change of name required by one of the conditions does not appear to play so important a part. This condition does not restrict alienation although it would support a reversion to the residuary legatee for noncompliance under the case of Smith v. Smith, 64 Neb. 563, 90 N. W. 560, which we hereby disapprove due to the enactment of the Uniform Property Act. Here again we have a decision issued before the enactment of the Uniform Property Act. It seems to us that a condition attached to a fee simple title which has for its purpose the satisfaction of a whimsical obsession or an expression of testator's vanity ought not be permitted as a fettering of a fee simple title. Such a condition is unreasonable in that fee titles to real estate are not proper places for trivial conditions evidencing personal whimsy. The coupling of the name provision with the 25-year residence requirement makes both conditions unreasonable, and even irrational. Where a grantor or testator grants or devises a fee simple title, he is not permitted to fetter the title that he created with inconsequential and unreasonable conditions otherwise valid. Such conditions are not favored in the law and they should be strictly construed against the testator or grantor as against a fee simple title. It is true, generally speaking, that a testator may dispose of his property as he pleases by the methods provided by statute and the public policy indicated; but he will not be permitted to do so in

violation of our statutory law and the public policy determined by the Legislature. The conveyance of real estate is of such importance to the state that one will not be permitted to become whimsical and unreasonable after creating an estate recognized by the law, such as an estate in fee simple, by attaching conditions repugnant to the estate created. On the other hand, we do not go so far as to say that all conditions subsequent attached to a fee simple estate are void where alienability is not involved. A condition attached to a fee simple estate, otherwise valid, must be reasonable and not materially affect its marketability. If it materially affects marketability adversely, it is an indirect restraint against alienation.

The writer of this opinion concurred with the former majority opinion on the theory that a direct restraint on alienation was void but that an indirect restraint was not. A majority of this court, including the writer, has come to the conclusion that the law is the same on direct and indirect restraints on alienation. The authorities are not in accord on the question. While much has been written on the subject, we adopt the following as a proper statement of the law: "As used in this treatise, the expression 'restraint on alienation' refers not merely to the restriction of the legal power of alienation, but also to the restriction of alienability as a practical matter. Any provision in a deed, will, contract, or other legal instrument which, if valid, would tend to impair the marketability of property, is a restraint on alienation." Simes and Smith, The Law of Future Interests (2d Ed.), § 1111, p. 4. "In brief, the law is concerned primarily with practical alienabiltiy, not with a theoretical power of alienation." Simes and Smith, The Law of Future Interests (2d Ed.), § 1115, p. 8. We hold that the restraint against alienation in the instant case is void and against public policy and the devisee has an indefeasible estate in fee simple.

There is a contention made that the ultimate decision

in this case must rest in part at least on the rule against perpetuities. We have serious doubts if the rule against perpetuities is of controlling importance in a case where a fee title has been created by a testator on his death subject to conditions subsequent which, directly or indirectly, prevent the alienability of the land constituting the subject of the devise. Where alienability is not involved, the rule against perpetuities may be an important factor. "A further reason is that, other things being equal, society is better off, if property is controlled by its living members than if controlled by the dead. Thus, one policy back of the rule against perpetuities is to prevent too much dead hand control of property. * * * Much that has just been said with reference to the policy of the rule against perpetuities can be applied to other related rules. Thus rules against direct restraints on alienation do prevent dead hand control, and provide a balance between the satisfaction of the desires of the present generation and of future generations to tie up property. However, direct restraints on inter vivos alienation, when applied to interests in specific tangible things, do also tend to take property out of commerce and thus prevent productivity. On the other hand, it would seem that direct restraints on the power to devise have nothing to do with taking property out of commerce, since a devise is not a commercial transaction. Nevertheless, the rules against direct restraints on the power to devise are about the same as those with respect to direct restraints on the power to convey. As was early recognized, a trust for the accumulation of income does not take property out of commerce or render it unproductive. Yet the law restricts it, for much the same reasons as justify the rule against perpetuities." Simes and Smith, The Law of Future Interests (2d Ed.), § 1117, p. 13. Consequently a fee simple estate subject to conditions amounting to a restriction against alienation is void and against public policy whether or not it is barred by the rule against

perpetuities. The creation of a fee simple estate subject to conditions not affecting alienation and otherwise valid, may be unenforcible if violative of the rule against perpetuities or a controlling statute.

The trial court allowed an attorney's fee against the estate of $1,500 for the plaintiff and $1,500 for the defendant. The defendant assigns this as error.

The county court has authority to allow attorneys' fees when the attorney is employed by the executor and rendered services which were necessary to the estate. Attorneys' fees may be allowed to an heir where the litigation resulted in benefits to all the heirs of the deceased. But an estate of a decedent will not ordinarily be held liable for attorneys' fees for services rendered at the request of a devisee or legatee. An estate is liable for attorneys' fees only when the services preserved the estate, added to its value, or were otherwise beneficial to it. In re Estate of Love, 136 Neb. 458, 286 N. W. 381. See, also, In re Estate of Jurgensmeier, 145 Neb. 459, 17 N. W. 2d 155.

The services rendered in the present case preserved no part of the estate nor added anything to the estate. We fail to see where the estate was in any way benefited. It is the duty of the courts to see to it that estates undergoing administration are carefully guarded especially where the interests of incompetents and minor heirs are affected. This is the foundation for the rule that attorneys' fees for services rendered at the request of a beneficiary, even though successful, are payable from funds of the estate only when such services preserved the estate, added to its value, or were otherwise beneficial to it. The allowance of attorneys' fees in the case before us cannot be sustained.

We withdraw that part of the former opinion in this case, to wit, Cast v. National Bank of Commerce T. & S. Assn., 185 Neb. 358, 176 N. W. 2d 29, insofar as it is in conflict with this opinion. We reverse that part of the judgment of the district court awarding attorneys'

fees. The judgment of the district court is affirmed as modified by denying the right of the parties to an allowance of attorneys' fees against the estate in this action.

AFFIRMED AS MODIFIED.

SPENCER, J., dissenting.

I cannot agree with the new approach set forth in the supplemental opinion herein, and adhere fully to our previous opinion.

The basic trouble with the supplemental opinion is the premise on which it is based, that we are dealing with a restraint on alienation of a vested estate in fee simple, and also that this case is controlled by Andrews v. Hall, 156 Neb. 817, 58 N. W. 2d 201, 42 A. L. R. 2d 1239. As set out in the previous opinion, I consider the devise to be a conditional limitation, and the fee a determinable, qualified, or base fee. There is no reversion to the grantor. Rather, here there is a passing over of the property to the residuary trust.

Andrews v. Hall, *supra,* has absolutely no applicability to this case because we are concerned here with a condition of vesting. Even if it did, which I do not concede, as the concurring opinion set out, the restraint at most would be an indirect one, and there cited the general rule that an indirect restraint is invariably valid unless it violates the rule against perpetuities. Simes and Smith, The Law of Future Interests (2d Ed.), § 1116, p. 9.

This conveyance does not violate the rule against perpetuities. But even if it could be construed to do so, only a portion of the condition would be affected and the rest should be enforceable. As set out in the previous opinion, the testator gave his nephew, or his issue if the nephew did not survive, certain property in fee simple absolute. The property involved herein, however, was given *only* to the nephew and conditionally *if, and only if,* the nephew performed, although the testator did provide that if one of the nephew's children performed, the conveyance to the nephew would be operative.

As noted in the previous opinion, most of the states uphold the validity of occupancy requirements or previously devised lands. Contra, there is an early case in North Carolina and a distinguishable case in Georgia. See the annotation on this point in 35 A. L. R. 2d 387.

On the question of name change, this court passed upon that point in Smith v. Smith, 64 Neb. 563, 90 N. W. 560, which I see no reason to overrule. The following from that case is pertinent herein: "That the conditions imposed are reasonable, and such as he was authorized to prescribe, is not questioned, and can not, we think, be challenged on any tenable grounds. 1 Underhill, Wills, sec. 516; 2 Jarman, Wills (Randolph & Talcott ed.), p. 579; Taylor v. Mason, supra; Webster v. Cooper, 14 How. (U. S.), 488, 500; Merrill v. Wisconsin Female College, 74 Wis., 415, 43 N. W. Rep., 104. In such a case it is the duty of the court to construe such provisions in a will, like all other contracts, with a view of carrying out the intention of the testator. St James Orphan Asylum v. Shelby, 60 Nebr., 796, 811." See, also, Restatement, Property, § 437, p. 2547, which states that restraints designed to induce the conveyee to adopt a certain name are normally valid.

I do not agree that public policy requires the result achieved by the supplemental opinion, for the same intent embraced in the will could be effectively accomplished by a trust. However, I realize that obviously the majority of the court are trying to restrict the power of a testator to conditionally limit a conveyance, and it would do no more violence to our law if a like provision in a trust were similarly voided.

With respect to the question of public policy, as evidenced by the Uniform Property Act, as well as the discussion on the purpose and policy of that act, I call attention to the fact that it permits the creation of a possibility of reverter or a right of reentry for a period of 30 years. See section 76-2,102, R. R. S. 1943, which reads as follows: "Neither possibilities of reverter nor

rights of entry or reentry for breach of condition subsequent, whether heretofore or hereafter created, where the condition has not been broken shall be valid for a longer period than thirty years from the date of the creation of the condition or possibility of reverter. If such a possibility of reverter or right of entry or reentry is created to endure for a longer period than thirty years, it shall be valid for thirty years." The statute does not prevent the creation of these future interests. Rather, it only prevents their subsequent reconveyance and limits their creation to 30 years. See section 76-299, R. R. S. 1943, and the words "hereafter reserved" or "hereafter created" in the other sections of subdivision (j).

While the intent statute, section 76-205, R. R. S. 1943, is only a rule of construction, until recently, it has been scrupulously followed in this jurisdiction. I do not feel that we should defeat the obvious intent of the testator herein by subterfuge.

SMITH, J., joins in this dissent.

BOSLAUGH, J., dissenting in part.

I am unable to agree with that part of the majority opinion which holds that all restraints on alienation, whether direct or indirect, are invalid. Both the Restatement of the Law of Property and Simes and Smith, The Law of Future Interests, recognize that some indirect restraints are valid. See, Restatement, Property, §§ 406, 407, pp. 2392, 2415; Simes and Smith, The Law of Future Interests (2d Ed.), §§ 1112, 1115, 1116, pp. 4, 7, 9.

As stated in Simes and Smith: "In brief, the law is concerned primarily with practical alienability, not with a theoretical power of alienation. All these rules tend primarily to further practical alienability. Whether a given provision will be held valid or not depends on a number of considerations, but, reduced to their lowest terms, these considerations amount to no more than this: One must consider, first, the extent to which the sort of provision in question tends to decrease practical alien-

ability; and, second, the purpose of the restraint in question. * * * This difference leads to a further generalization which seems warranted by the specific rules discussed in the following chapters:  If the restraint is direct, it may be bad regardless of the length of time it is to last.  On the other hand, if the restraint is indirect, it will invariably be valid if it is to terminate within a life or lives in being and twenty-one years beyond; but, if it is to last longer than that period, the indirect restraint may be bad."  §§ 1115, 1116, pp. 8, 10.  In my opinion the restraint involved in this case is invalid because it fails to satisfy the requirements stated in Restatement, Property, paragraphs (c) and (d) of section 406, pp. 2395, 2396.